# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **RONCO CONSULTING CORP.,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: PWG-17-305 |
| **LEADING EDGE VENTURES, LLC,** | * | |
| Defendant. | * | |
| | * | |

## MEMORANDUM OPINION AND ORDER

Plaintiff RONCO Consulting Corporation ("RONCO") seeks to vacate an arbitration award issued in favor of Defendant Leading Edge Ventures, LLC ("Leading Edge"), and has moved for summary judgment in its favor. Leading Edge seeks to dismiss RONCO's complaint and to confirm the same award. Because RONCO did not serve timely notice of its application to vacate the award on Leading Edge, I must grant Leading Edge's motion to dismiss as well as its petition to confirm the award, and I will deny RONCO's summary judgment motion as moot.

## Background

RONCO, which had been awarded "a prime contract to perform security vetting services at the Kandahar Air Base in Afghanistan," entered into a subcontract ("Agreement") with Leading Edge. Compl. 1, ECF No. 1; *see* Agr., Compl. Ex. A, ECF No. 1-2. Pursuant to the Agreement, Leading Edge had to "provide 'written proof of the ability to assign fully cleared personnel' prior to award"; to do so, "Leading Edge had to obtain a 'Facility Clearance'" from the United States Department of Defense's Defense Security Services ("DSS") division. Compl. 1; Agr. § 2.2. Acting as sponsor for Leading Edge (as it was obligated to do), RONCO

submitted three Facility Clearance applications to DSS, but did not obtain the clearance because it failed to provide a required form (a "DD-254 form"), which RONCO claims it "could not provide." Compl. 2. Consequently, RONCO terminated the Agreement.

The Agreement also included an arbitration provision, Agr. § 10.4, pursuant to which Leading Edge sought to arbitrate the termination. Compl. 2. RONCO agreed to arbitration, while maintaining that "the merits of DSS's decision to reject the [Facility Clearance] application cannot be questioned in the arbitration proceeding." *Id.* The arbitrator ruled in Leading Edge's favor, finding that "the 'DSS Specialists were in error' in demanding the DD 254 form" and that "RONCO should have given Leading Edge the opportunity to 'disabuse DSS' from insisting on a DD 254." *Id.* He issued a Final Award in Washington, District of Columbia, on November 3, 2016. Final Award, Compl. Ex. C, ECF No. 1-4 (incorporating April 7, 2016 Partial Final Award, Compl. Ex. B, ECF No. 1-3, by reference).

On February 1, 2017, RONCO filed a complaint in this Court, seeking to vacate the arbitration award. Leading Edge filed a timely Petition to Confirm Arbitration Award as part of this same litigation. ECF No. 21; *see* Ans. to Pet. 2, ECF No. 22 (acknowledging that "Leading Edge applied to the Court for an order confirming the award within one year after the award is made as contemplated by 9 U.S.C. § 9"). Additionally, Leading Edge filed an Amended Motion to Dismiss Complaint to Vacate, ECF No. 23, in which it also sought confirmation of the arbitration award.[1] Its primary argument is that RONCO failed to properly or timely serve it with notice of its Complaint to Vacate pursuant to the requirements of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12, because it did not effect service by U.S. Marshal, and it did not

---

[1] Before it filed its Petition to Confirm Arbitration Award, Leading Edge had filed a motion to dismiss, raising the timeliness issue only, ECF No. 16; it amended its motion after filing its Petition, so that the motion now addresses timeliness and whether RONCO has presented valid grounds for vacating the award.

2

serve the Complaint (or notice of it) within three months of the arbitration award. Def.'s Mem. 5, ECF No. 23-1.

RONCO does not claim that it served notice by U.S. Marshal or within three months of the issuance of the Final Award. Yet, it believes that its Complaint to Vacate is properly before the Court because it "commenced the action within three months after the final award was filed or delivered" and it "complied with the request to waive service of process provision in Rule 4 and then served Defendant within 90 days as now required by Rule 4." Pl.'s Mot. Sum. J. 1, ECF No. 26. RONCO has filed a Motion for Summary Judgment, along with a Memorandum in Support of its motion and in response to Leading Edge's Amended Motion to Dismiss, ECF No. 27. Leading Edge filed a Reply, ECF No. 28, with regard to both its Amended Motion to Dismiss and RONCO's summary judgment motion. RONCO has not filed a reply with regard to its summary judgment motion, and the time for doing so has passed. *See* Loc. R. 105.6. A hearing is not necessary. Because RONCO failed to comply with the notice requirements of the FAA, it is unnecessary for me to reach its additional arguments attacking the arbitrator's award. I will grant Leading Edge's Amended Motion to Dismiss and deny RONCO's Complaint to Vacate, treated as a motion to vacate, and I will deny its Motion for Summary Judgment as moot. Additionally, I will grant Leading Edge's Petition to Confirm Arbitration Award.

## **Standard of Review**

Pursuant to Rule 12(b)(6), RONCO's pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). That is, "while a plaintiff does not need to demonstrate in a complaint that

the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Gibson v. U.S. Postal Serv.*, No. CCB-13-2959, 2014 WL 2109919, at *1 (D. Md. May 20, 2014) (quoting *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012)). Therefore, it must contain factual allegations that are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007) (internal citations and alterations omitted). Accordingly, for purposes of considering a motion to dismiss, this Court accepts the facts alleged in the Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). And, "[a] copy of a written instrument that is an exhibit to a pleading," such as the Agreement and the Final Award, "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). I also will consider the Stipulated Facts that the parties jointly submitted. *See Levin v. United States*, No. PX 15-1880, 2017 WL 4023177, at *1 (D. Md. Sept. 13, 2017) ("These facts are derived from Levin's Complaint and the parties' joint stipulation of facts, and are accepted as true for purposes of Defendant's motion to dismiss."); *Robinson v. Bd. of Ed. of St. Mary's Cty.*, 143 F. Supp. 481, 484 (D. Md. 1956) ("The parties have filed a stipulation of facts and have agreed that the stipulation and attached exhibits may be used in whole or in part by any of the parties at the hearing on the motion to dismiss . . . .").

## Governing Law

Both parties seek relief pertaining to an arbitration award issued in Leading Edge's favor, with Leading Edge seeking to enforce it while RONCO seeks to vacate it. There is an "emphatic federal policy in favor of arbitral dispute resolution." *Fakhri v. Marriot Int'l Hotels, Inc.*, 201 F. Supp. 3d 696, 709–10 (D. Md. 2016) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985); citing, e.g., *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685

F.3d 376, 390 (4th Cir. 2012)), *appeal dismissed*, No. 16-2061, 2016 WL 9724329 (4th Cir. Oct. 21, 2016). Consequently, "[j]udicial review of an arbitration award in federal court is 'substantially circumscribed.'" *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)). Indeed, given that "full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation," a court's review of an arbitration award "is among the narrowest known at law." *Id.* (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)).

RONCO filed its complaint in this Court pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08. Compl. ¶ 12. Chapter 2 implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). The Convention covers arbitration agreements and awards arising out of commercial relationships where one party is not a citizen of the United States, as well as where both parties are U.S. citizens and, as here, the agreement or award "envisages performance or enforcement abroad." 9 U.S.C. § 202. It confers jurisdiction on federal district courts for actions "falling under the Convention," which are "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. And, it adopts the provisions of Chapter 1 of the FAA, 9 U.S.C. §§ 1–12, "to the extent that chapter is not in conflict with . . . chapter [2] or the Convention as ratified by the United States." 9 U.S.C. § 208; *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997) (concluding that the Convention "allow[s] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award").

5

Section 9 permits the court to confirm an arbitration award, while Section 10 directs the court to vacate an arbitration award under limited circumstances.[2] 9 U.S.C. §§ 9, 10. Section 9 provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. Section 10 states:

> [T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added). Insofar as these provisions refer to a court with jurisdiction, as noted, because RONCO filed suit under Chapter 2, rather than Chapter 1, this Court has

---

[2] Certainly, the FAA "sets forth the sole method to challenge an arbitration award—'by serving a *motion* to vacate within three months of the rendering of the award,' *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986)—and does not permit 'a party to initiate a challenge to an arbitration award by filing a complaint.' *O.R. Securities, Inc. v. Professional Planning Associates, Inc.,* 857 F.2d 742, 745 (11th Cir.1988)." *ANR Coal Co. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 497 (4th Cir. 1999) (emphasis added). But where, as here, no prejudice results from the filing of a complaint, rather than a motion, the court may construe the complaint as a motion so as not to "elevate form over substance." *See id.* Accordingly, I will treat RONCO's complaint as a motion to vacate. *See id.*; *see also* Fed. R. Civ. P. 1.

jurisdiction to hear the Complaint to Vacate, as well as the Petition to Confirm Arbitration Award. *See* 9 U.S.C. § 203. "If there is a valid contract between the parties providing for arbitration, and if the dispute resolved in the arbitration was within the scope of the arbitration clause, then substantive review is limited to those grounds set out in [9 U.S.C. § 10]." *Choice Hotels Int'l, Inc. v. Shriji 2000*, No. DKC-15-1577, 2015 WL 5010130, at *1 (D. Md. Aug. 21, 2015) (citing *Apex Plumbing*, 142 F.3d at 193). As "the party opposing the award," RONCO "bears the burden of proving the existence of grounds for vacating the award." *Choice Hotels Int'l, Inc. v. Austin Area Hosp., Inc.*, No. TDC-15-0516, 2015 WL 6123523, at *2 (D. Md. Oct. 14, 2015) (citing *Three S Del., Inc.*, 492 F.3d at 527).

Here, the parties do not dispute that the Agreement between them included an arbitration provision, which provided:

> In the event of a dispute, the desire is to handle all disputes at the lowest management level possible. . . . However, if all efforts at dispute resolution fail, the matter shall be arbitrated pursuant to the laws [of] the State of Florida in the United States, with binding arbitration provided by the American Arbitration Association.

Agr. § 10.4. And, while RONCO challenges whether the arbitration award addressed issues which it agreed to arbitrate, it nonetheless participated in arbitration proceedings with Leading Edge, after voicing its objections. Now, it seeks to vacate the arbitration award pursuant to 9 U.S.C. § 10.

### **Vacating Arbitration Award**

The crux of Leading Edge's motion to dismiss is that RONCO failed to comply with either of the two components of the FAA notice requirements. First, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Second, when, as here, the

7

adverse party is not a resident of the district where the award issued, notice of the motion "shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." *Id.*

"A motion to vacate filed or served after this three-month period is time barred." *Chase v. Nordstrom, Inc.*, No. CCB-10-2114, 2010 WL 4789442, at *2 (D. Md. Nov. 17, 2010) (citing *Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C.,* 491 F.3d 171, 177–78 (4th Cir. 2007); *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir. 1986)). This limitations period serves "[t]he role of arbitration as a mechanism for speedy dispute resolution," as well as the "national policy favoring arbitration" that "[t]he FAA embodies." *Popular Sec., Inc. v. Colón*, 59 F. Supp. 3d 316, 318–19 (D.P.R. 2014) (citing *Hall Street Assocs. v. Mattel,* 552 U.S. 576, 581–82 (2008)).

The Arbitrator issued the Final Award on November 3, 2016 and emailed it to the parties that day. Stip. Facts ¶ 12, ECF No. 15. In *Chase*, this Court found email delivery to be sufficient. *See Chase*, 2010 WL 4789442, at *2 n.2. Therefore, RONCO had until February 3, 2017 to serve notice of its motion to vacate the award. *See* 9 U.S.C. § 12. Even if the three-month period did not being to run until RONCO received its copy by mail on November 23, 2016, *see* Stip. Facts ¶ 13, RONCO still would have had to serve notice of its Complaint to Vacate by February 23, 2017.

On February 1, 2017, RONCO filed suit in this Court, seeking to vacate the arbitration award. RONCO mailed its pleadings, along with a Request for Waiver of Service, to Leading Edge's attorney and registered agent that same day. Stip. Facts ¶ 17. RONCO also sent the documents via FedEx Ground, and Leading Edge's registered agent and owner received the FedEx package on February 8, 2017. *Id.* ¶¶ 18–19. Leading Edge's registered agent and owner received the documents by mail on February 9, 2017. *Id.* ¶ 20. Almost thirty days later,

8

RONCO learned that Leading Edge declined to waive service, *id.* ¶ 21, and it served the documents on Leading Edge's registered agent by private process server on March 18, 2017. *Id.* ¶ 23.

In RONCO's view, its Complaint should not be dismissed because it "timely filed the complaint and fully complied with the service of process provisions in Rule 4," and it mailed the Complaint on February 1, 2017, and Leading Edge's agent received it by February 8, 2017. Pl.'s Mem. 26. RONCO insists that in *Henderson v. United States*, 517 U.S. 654, 669-72 (1996), "the Court held that compliance with the service of process provisions within Rule 4 'displaced' a statute which ostensibly imposed different service of process requirements," and "[u]nder the Rules Enabling Act (then and now), when the Supreme Court promulgates 'general rules of practice and procedure' all 'laws in conflict with such rules shall be of no further force or effect.'" *Id.* at 28 (quoting 28 U.S.C. § 2072(b)).[3] As RONCO sees it, the service-by-a-U.S.-Marshal requirement is an antiquated requirement that "Rule 4 effectively eliminated" when it "permitted private service of process." *Id.* at 30.

But, as Leading Edge notes, *see* Def.'s Reply 3, the Federal Rules of Civil Procedure, including the service of process provisions of Rule 4, "govern proceedings under [certain] laws," which include "9 U.S.C., relating to arbitration." Fed. R. Civ. P. 81(a)(6). But, importantly, the Rules of Civil Procedure do not govern proceedings under those laws referenced by Rule

---

[3] The Rules Enabling Act, 28 U.S.C. § 2701 *et seq.*, "authorizes the judiciary to make rules . . . 'for the conduct of their business,'" provided that the rules are "'consistent with Acts of Congress and rules of practice and procedure,'" such as the Federal Rules of Civil Procedure. *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Lynch*, 826 F.3d 191, 197 (4th Cir.) (quoting 28 U.S.C. § 2071; citing 28 U.S.C. § 2072), *cert. denied,* 137 S. Ct. 459 (2016), *reh'g denied*, 137 S. Ct. 716 (2017). Stated differently, "the Rules Enabling Act tells district courts that they cannot use local rules to contradict the Supreme Court's rules of procedure." *Id*. And, the rules cannot "abridge, enlarge or modify any substantive right." *Id*. (quoting 28 U.S.C. § 2072(b)).

81(a)(6) to the extent that they "provide other procedures." *Id.* Thus, the service procedures outlined in Rule 4 simply do not supplant those provided in 9 U.S.C. § 12. *See id.* Moreover, Rule 4 governs procedure and timing for service of the summons and complaint in civil cases generally, *see* Fed. R. Civ. P. 4(c)(1), (m), whereas 9 U.S.C. § 12 governs service of notice of a motion to vacate an arbitration award (for which there is a strong policy promoting the quick resolution of arbitrated disputes).

There is support (albeit in a footnote in a case from another district) for RONCO's argument that the requirement that service of notice of a motion to vacate be effected by a U.S. Marshal is a holdover from days of yore. *E.g.*, *Matter of Arbitration between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 67 n.3 (S.D.N.Y. 1993) ("Section 12 is an anachronism not only because it cannot account for the internationalization of arbitration law subsequent to its enactment, but also because it cannot account for the subsequent abandonment of United States marshals as routine process servers. Amendments to the Federal Rules of Civil Procedure in the early 1980s substantially changed the identity of those who may serve process. '[P]rior to 1980, the marshal was the stated summons server unless there was a person 'specially appointed' by the court to make service.' The 'ostensibly principal purpose' of the amendments was to 'tak[e] the marshals out of summons service almost entirely.'" (quoting *Changes in Federal Summons Service Under Amended Rule 4 of the Federal Rules of Civil Procedure,* 96 F.R.D. 81, 94 (1983))). Perhaps so, but even if service did not have to be by Marshal, RONCO still failed to effect timely service.

Rule 4(h) of the Federal Rules of Civil Procedure provides that service on a corporation, partnership, or association in the United States must be

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

10

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant;

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1), in turn, provides that an individual in the United States may be served by "following state law for serving a summons . . . in the state where the district court is located or where service is made," or by personally delivering the summons and complaint to the individual, leaving them at the individual's home with another resident of suitable age and discretion, or delivering them to an agent authorized to accept service. Fed. R. Civ. P. 4(e)(1), (2). Notably, Rule 4 "does not directly provide for service by mail . . . ." *Mallard v. MV Transp., Inc.*, No. DKC 11-2997, 2012 WL 642496, at *5 (D. Md. Feb. 27, 2012).

> Under the laws of Maryland, where this Court is located, an individual may be served
>
> (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery--show to whom, date, address of delivery."

Md. Rules 2-121(a). And, under the laws of Washington, where RONCO attempted to serve, and ultimately served, Leading Edge,

> The summons shall be served by delivering a copy thereof, as follows:
>
> . . .
>
> (9) If against a company or corporation [such as Leading Edge], to the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent.
>
> . . .
>
> (16) [If against an individual], to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.

11

Wash. Rev. Code Ann. § 4.28.080. The statute explicitly states that "[s]ervice made in the modes provided in this section is personal service." *Id.* Indeed, "[s]ervice of process by means other than personal service, i.e., constructive and substitute service, 'is in derogation of the common law and cannot be used when personal service is possible.'" *Secco v. Secco*, No. 34050-3-III, 2017 WL 5499875, at *3 (Wash. Ct. App. Nov. 16, 2017) (quoting *Rodriguez v. James–Jackson*, 111 P.3d 271, 274 (Wash. Ct. App. 2005)).

Thus, even if the means of service enumerated in Rule 4 and incorporated into Rule 4 by reference to state laws replaced the requirement of service by a U.S. Marshal, RONCO still did not effect service until March 18, 2017, when it served Leading Edge's registered agent by private process server. Although the Maryland Rules provide for service by mail, the mail must be by certified mail, restricted delivery. RONCO sent the package via first class mail and Federal Express, without any restrictions on its delivery. As a result, "Leading Edge's registered agent and owner[] received a FedEx package *left at his door* containing the Complaint, all Exhibits, a Notice of Lawsuit and Request for Waiver of Service, and Rule 4 Waiver of Service of Process on February 8, 2017," and he "received a copy of the Complaint, all Exhibits, a Notice of Lawsuit and Request for Waiver of Service, and Rule 4 Waiver of Service of Process *by first class mail* on February 9, 2017." Stip. Facts ¶¶ 19, 20 (emphasis added). Neither mailing complied with the service requirements of the federal and state rules. *See* Fed. R. Civ. P. 4(e)(1), (h)(1); Md. Rules 2-121(a); Wash. Rev. Code Ann. § 4.28.080; *see also Secco*, 2017 WL 5499875, at *3; *Mallard*, 2012 WL 642496, at *5.

In sum, RONCO never properly served notice of its Complaint to Vacate in the manner required by the FAA because it never did so by U.S. Marshal. And, even if the manner of service effected by RONCO complied with the federal, Maryland, or Washington rules of civil procedure, such that the March 18, 2017 service by private process server satisfied the type of

12

service required by the FAA, RONCO still did not effect that service within three months of the Final Award, which issued more than four months earlier, on November 3, 2016. Moreover, even if the clock did not start running until RONCO received the Final Award by mail on November 23, 2016, more than three months still had passed before the March 18, 2017 service. Finally, I note that "[t]he Fourth Circuit has not yet recognized equitable exceptions to the FAA's three-month deadline for serving a motion to vacate upon an adverse party." *Chase v. Nordstrom, Inc.*, No. CCB-10-2114, 2010 WL 4789442, at *2 (D. Md. Nov. 17, 2010). On the contrary, "[t]he Fourth Circuit has strongly intimated—but has stopped short of explicitly holding—that there are no equitable exceptions to the three-month limitations period set forth in the Federal Arbitration Act." *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors,* 647 F. Supp. 2d 587, 594 (D. Md. 2009); *see also Taylor,* 788 F.2d at 225 ("The existence of any such exceptions to § 12 is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law exceptions because there is no common-law analogue to enforcement of an arbitration award."). Consequently, Leading Edge's Amended Motion to Dismiss must be granted, and RONCO's Complaint to Vacate, construed as a motion to vacate, is denied as untimely. And, RONCO's Motion for Summary Judgment is denied as moot.

## Confirming Arbitration Award

Given that RONCO failed to file a timely motion to vacate, I must grant Leading Edge's Petition to Confirm Arbitration Award. *See* 9 U.S.C. § 9 (stating that, when a party files a timely petition to confirm an arbitration award, "the court *must* grant such an order unless the award is vacated, modified, or corrected" (emphasis added)); *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary:

13

confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act. "); *First Baptist Church of Glendarden v. New Mkt. Metalcraft, Inc.*, No. AW-10-00543, 2010 WL 3037030, at *1 (D. Md. July 30, 2010) ("Confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"), *aff'd*, 442 F. App'x 789 (4th Cir. 2011); *Parsons*, 647 F. Supp. 2d at 594 ("[Because neither party timely moved to vacate or modify the arbitral award, this Court is also required to grant Parsons's Petition and Motion for Order Confirming the Award."). I note that the arbitrator awarded Leading Edge "the sum of $501,416.00, which represents $473,322.00 in the awarded damages and $28,094.00 in the awarded interest," as well as "the sum of $30,498.89, representing . . . fees and expenses previously incurred by [Leading Edge]," and "any amount [Leading Edge] contributed to" the $1,733.75 "cost of the hearing room rental." Final Award 16. The arbitrator ruled that "[t]he parties' attorney fees shall be borne as incurred," and denied any claims not expressly granted. *Id.* Leading Edge now seeks the $501,416 damages awarded, plus the $30,498.89 awarded for fees and expenses, for a total of $531,914.89. Def.'s Pet. 3, 5. I will confirm this amount. *See* 9 U.S.C. § 9.

Leading Edge also seeks post-award interest, to include pre- and post-judgment interest. Def.'s Pet. 3. Insofar as it seeks post-judgment interest, "the court need not specifically grant an award of post-judgment interest because [the petitioner] is entitled to recover such interest by operation of law." *Choice Hotels, Int'l, Inc. v. Shree Navdurga, LLC*, No. DKC-11-2893, 2012 WL 5995248, at *3 (D. Md. Nov. 29, 2012). The federal post-judgment interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *see also Goldman, Walker, LLC v. Shahab*, No. GJH-13-113698, 2015

14

WL 306746, at *6 (D. Md. Jan. 22, 2015) ("[O]nce an arbitration award is confirmed in federal court, the rate specified by § 1961 applies . . . even if the arbitration award purported to grant post-judgment interest [at a different rate]" (quoting *Fidelity Fed Bank v. Durga Ma Corp.,* 387 F.3d 1021, 1024 (9th Cir. 2004))). *Cf. Forest Sales Corp. v. Bedingfield,* 881 F.2d 111, 111–13 (4th Cir. 1989) (concluding that federal post-judgment interest statute applies in diversity action).

As for post-award, pre-judgment interest, "the award of prejudgment interest is within the discretion of this court, to be determined according to judge-made principles." *CSX Transp., Inc. v. Transportation-Commc'ns Int'l Union*, 413 F. Supp. 2d 553, 572 (D. Md. 2006) (quoting *Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 194 (1995)), *aff'd*, 480 F.3d 678 (4th Cir. 2007); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998) ("Because the district court below held federal subject-matter jurisdiction under 9 U.S.C. § 203, the decision whether to grant prejudgment interest was a matter for the court's discretion and was not controlled by state law."). Thus, the court "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717, 727 (4th Cir. 2000).

Here, the Final Award provided for *pre*-award interest at the rate the parties agreed was applicable, that is, "4.75%, as prescribed by Florida law." Final Award 15–16. Leading Edge seeks *post*-award, pre-judgment interest at the same rate. Def.'s Pet. 3–4. This Court has noted that, while the federal interest rate applies to post-judgment interest, post-arbitration interest may be awarded at the state statutory rate. *Goldman*, 2015 WL 306746, at *5 (citing *United Cmty. Bank v. McCarthy,* 2010 WL 2723726, at *2–4 (W.D.N.C. July 8, 2010)). Given that the parties selected Florida law to govern arbitration, Agr. § 10.4, and that pre-award interest was awarded at the Florida statutory rate, I will award post-award, pre-judgment interest beginning on

15

December 3, 2016—the date on which RONCO's payment was due under the Final Award—at the Florida statutory rate in effect at the time of the Final Award (4.75%), to compensate Leading Edge for the delay in payment. *See Grigsby & Assocs., Inc. v. M Sec. Investments, Inc.*, No. 06-23035-CIV, 2010 WL 11452307, at *2 (S.D. Fla. Sept. 30, 2010) ("[P]re-judgment interest is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his . . . and absent any reason to the contrary, it should normally be awarded when damages have been liquidated' by an arbitration award." (quoting *Indus. Risk. Insurers,* 141 F.3d at 1446-47 (internal citations omitted))).

## **ORDER**

Accordingly, it is, this 11th day of December, 2017, by the United States District Court for the District of Maryland, hereby ORDERED that

1. Defendant's Amended Motion to Dismiss, ECF No. 23, IS GRANTED;
2. Plaintiff's Complaint to Vacate, ECF No. 1, construed as a motion to vacate, IS DENIED as untimely;
3. Defendant's Petition to Confirm Arbitration, ECF No. 21, IS GRANTED;
4. The November 3, 2016 Final Award of $501,416.00 in damages and pre-award interest, plus $30,498.89 in fees and expenses IS CONFIRMED;
5. Judgment IS ENTERED in favor of Leading Edge in the amount of $501,416.00 in damages and pre-award interest, plus $30,498.89 in fees and expenses, plus post-award, pre-judgment interest from December 3, 2016 to December 11, 2017 at the rate of 4.75%, all of which shall accrue post-judgment interest as specified by statute;
6. Plaintiff's Motion for Summary Judgment, ECF No. 26, IS DENIED AS MOOT; and

7. Defendant's request for attorneys' fees must be briefed, and I will schedule a call to set a briefing schedule.

/S/
Paul W. Grimm
United States District Judge

lyb