**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **RONCO CONSULTING CORPORATION,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-17-305 |
| **LEADING EDGE VENTURES, LLC,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff RONCO Consulting Corporation ("RONCO") and Leading Edge Ventures, LLC ("Leading Edge") entered into an agreement that contained an arbitration clause on February 1, 2013. Agreement, ECF No. 1-2. When RONCO terminated the agreement, Leading Edge sought to arbitrate the termination, and the arbitrator ruled in Leading Edge's Favor. Mem. Op. & Op. 2, ECF No. 31. RONCO then filed a complaint in this Court to vacate the arbitration award. Compl., ECF No. 1. I granted Leading Edge's Motion to Dismiss RONCO's Complaint and its Petition to Confirm Arbitration Award, and denied as moot RONCO's Motion for Summary Judgment. Mem. Op. & Or. I informed the parties that briefing would be required to determine whether attorneys' fees could be awarded. *Id.* at 17. Leading Edge seeks attorneys' fees limited to this action and not those related to the arbitration. Def. Mot., ECF No. 37.[1] The parties disagree as to whether the Revised Florida Arbitration Code ("RFAC"), Fla. Stat.

---

[1] The parties fully briefed the motion. ECF Nos. 37-1, 40, 41. A hearing is not necessary. *See* Loc. R. 105.6.

§ 682.15 (2013) governs their agreement to arbitrate, and therefore, whether Leading Edge is entitled under it to recover attorneys' fees. Finding that the RFAC is applicable and permits awarding attorneys' fees, I will award $47,387.20 to Leading Edge.

## Discussion

*Authority to Award Attorneys' Fees*

As an initial matter, this Court must determine under Florida law[2] whether it can award Leading Edge attorneys' fees. Leading Edge argues that the parties' February 2013 arbitration agreement ("Agreement") is governed by the RFAC, which was enacted in July 2013. Def.'s Mem. 2. RONCO counters that, because the Agreement was signed prior to the RFAC's enactment, it should not be applied retroactively and its predecessor statute, the Florida Arbitration Code ("FAC"), should govern. Pl.'s Opp'n 4–6. Whether the RFAC is applicable to the Agreement is dispositive, as the RFAC permits the awarding of attorneys' fees in litigation to confirm, modify, or vacate an arbitration award, but the FAC did not. *Compare* Fla. Stat. § 682.15 (2012) ("Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.") *with id.* § 682.15 (2013) ("On motion of a prevailing party to a contested judicial proceeding . . . , the court may add *reasonable attorney fees* and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.") (emphasis added).

Regarding the applicability of the RFAC, the Florida Code states:

---

[2] The parties agree that Florida law governs this case. *See* Def.'s Mot. 2; Pl.'s Opp'n 4–8.

2

> (1) The Revised Florida Arbitration Code governs an agreement to arbitrate made on or after July 1, 2013.
>
> (2) Until June 30, 2016, the Revised Florida Arbitration Code governs an agreement to arbitrate made before July 1, 2013, if all the parties to the agreement or to the arbitration proceeding so agree in a record. Otherwise, such agreements shall be governed by the applicable law existing at the time the parties entered into the agreement.
>
> (3) The Revised Florida Arbitration Code does not affect an action or proceeding commenced or right accrued before July 1, 2013.
>
> (4) Beginning July 1, 2016, an agreement to arbitrate shall be subject to the Revised Florida Arbitration Code.

Fla. Stat. § 682.013 (2013).

Subparagraphs (1) and (3) of § 682.013 are inapplicable because the Agreement was entered into on February 1, 2013, Agreement 9, ECF No. 1-2, and neither party has argued that the action at hand commenced or a right accrued before July 1, 2013. Subparagraph (2) of § 682.013 is inapplicable because June 30, 2016 has passed. Thus pursuant to the plain language of § 682.013(4), the Agreement is governed by the RFAC. *See Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So.3d 294, 301 (Fla. 2017) ("The goal of statutory interpretation is to identify the Legislature's intent. To do so, this Court first consults the plain meaning of the statute's text. 'When the statute is clear and unambiguous,' we use the plain language of the statute and avoid rules of statutory construction to determine the Legislature's intent.'") (internal citations omitted); *Koile v. State*, 934 So. 2d 1226, 1230–31 (Fla. 2006) (quoting *Daniels v. Florida Dept. of Health*, 898 So.2d 61, 64 (Fl. 2005)); *BDO Seidman, LLP v. Banco Espirito Santo Int'l, Ltd.*, 26 So.3d 1, 3 (Fla. Dist. Ct. App. 2009) ("Where, as here, a statute is free from ambiguity, its plain meaning must be followed"). Therefore, Leading Edge is entitled to seek attorneys' fees.[3] *See* Fla. Stat. §§ 682.013(4); 682.15.

---

[3] I need not address the parties' arguments on applying statutes retroactively or awarding attorneys' fees based on the Court's inherent authority because the statutory language clearly indicates the Agreement is governed by the RFAC and not the FAC.

3

*Attorneys' Fees Are Appropriate*

Awarding attorneys' fees is a matter of the Court's discretion. Fl. Stat. § 682.15. RONCO argues that this Court should exercise its discretion to deny them, Pl.'s Opp'n 6–8, because the issues presented were "issues where reasonable parties differ[] as to the appropriateness of the contested action." While RONCO is correct that a challenge to an arbitration award is permitted, it does not follow that having done so and lost, it should not be required to pay the attorneys' fees incurred by Leading Edge in successfully contesting that challenge. Moreover, although, giving RONCO the benefit of the doubt that they challenged the award in good faith, their challenge was not a strong one because it was untimely. Further, there is nothing in the Florida Code that suggests that the party that lost during arbitration can avoid paying attorneys' fees so long as it challenges the arbitration results by raising an argument on which reasonable persons can disagree. Reading such a limitation into the Florida statute would substantially narrow it to a degree not supported by its straightforward language: "the court may add reasonable attorney fees . . . incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award." Fl. Stat. § 682.15. Moreover, RONCO's litigation undermined the very function of arbitration (mainly the speedy and efficient resolution of disputes), *see Royal Atl. Health Spa, Inc. v. B.L.N., Inc.*, 677 So.2d 1385, 1387 (Fl. Dist. Ct. App. 1996), and needlessly and expensively protracted the resolution of their dispute. As such, I will award fees to Leading Edge.

*Attorneys' Fee Award Calculation*

The Fourth Circuit recently explained the procedure by which attorneys' fees are awarded in *Randolph v. Powercomm Constr. Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017):

First, "the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (internal quotation marks omitted). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *McAfee*, 738 F.3d at 88. Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (internal quotation marks omitted). When "all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (alterations, ellipsis, and internal quotation marks omitted). Third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (internal quotation marks omitted).

"In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (internal citations omitted)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The twelve *Johnson* factors to be evaluated are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Thompson*, 2002 WL 31777631, at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19). However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'"

5

*Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).  Nonetheless, the Fourth Circuit has reaffirmed the applicability of the *Johnson* factors even when they appear to be subsumed into the lodestar calculation, *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013).

In calculating the lodestar amount, the party seeking fees "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after an initial determination that the attorney's hourly rate was reasonable for the particular district, that attorney's fees requested by plaintiff were reasonable based on documentation of hours worked and tasks completed); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorneys' fees based on affidavits and the record).

Additionally, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides that "Lawyers admitted to the bar for twenty (20) years or more" may charge between $300 and $475 per hour.  Loc. R. App'x B ¶ 3(e) (footnote omitted).  However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6.  The Court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509–10 (D. Md. 2000).

Here, Leading Edge seeks a total of $54,564.00 in attorneys' fees for services provided by two attorneys, John Bonello and Kenneth Brody of David Brody and Dondershine, LLP. Def.'s Reply 2, 8.  As required by this Court's Local Rules, they have provided itemized billing

entries, *see, e.g.*, Billing Entries, ECF No. 37-2; Reply Expenses, ECF No. 41-1. Leading Edge's memorandum also sets forth the experience level of its counsel. Def.'s Mem. 8–9. Leading Edge's counsel have over 20 years of experience each and billed at a rate of $340.00 in February 2017 and $350.00 beginning in March 2017. *Id.* RONCO does not dispute counsel's hourly rates or address the number of hours Leading Edge's counsel spent on this matter. *See generally* Pl.'s Opp'n 1–14 (arguing only whether attorneys' fees should be awarded under the Florida code or the Court's inherent authority and if the Agreement permitted an award of attorneys' fees).

Leading Edge only is entitled to a "*reasonable* hourly rate multiplied by hours *reasonably* expended." *Grissom*, 549 F.3d at 320 (emphasis added); *see also Hensley*, 461 U.S. at 433–34 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"). RONCO does not oppose the hourly rates Leading Edge's counsel seek, and I find them reasonable, as they are within the guidelines set by this Court's Local Rules—especially as they are below the highest acceptable rate. Therefore, I will adopt the rates proposed by Leading Edge: $340.00 per hour for both Mr. Bonello and Mr. Brody in February 2017, and $350.00 per hour for both attorneys beginning in March 2017. Def.'s Mem. 9; Billing Entries 1–4; Reply Expenses 1.

Yet, in evaluating the *Johnson* factors, Leading Edge's billing statements fail to demonstrate that the full amount sought is warranted, particularly given the number of hours spent, the claimed level of experience, and the complexity of the matter. There are a number of instances where Leading Edge's counsel spent an excessive amount of time when compared to their cited experience. For example, both Mr. Bonello and Mr. Brody are highly experienced attorneys who have over 20 years of relevant experience each; however, they billed almost 60

7

hours for work (predominately research and drafting) on Leading Edge's initial Motion to Dismiss, ECF No. 16, the Petition to Confirm the Arbitration Award, ECF No. 21, and Amended Motion to Dismiss, ECF No. 23 (collectively "Motion to Dismiss & Petition Hours"). *See* Billing Entries 1–3. In contemplating the *Johnson* factors, it is difficult to conclude that attorneys with so much experience would need to spend approximately 60 hours on these documents, particularly when Leading Edge's Amended Motion to Dismiss incorporated almost wholesale its original motion, *compare* ECF No. 21 *with* ECF No. 23. I find that a reasonable amount of time to have spent on these documents would have been a total of 45 hours, which counsel could have billed at $15,750. *See Dause v. Broadway Servs., Inc.*, JKB-11-3136, 2012 WL 1131524, at *2 (D. Md. Apr. 3, 2012) (reducing and limiting attorneys' fees to a collective amount given the experience of the attorneys in the litigation and the complexity of the matter). For the same reason, I will adjust the hours devoted to Leading Edge's reply memorandum, ECF No. 28 from 41.25 hours to 32 hours ($11,200) ("Reply Hours").

Finally, Leading Edge seeks 21.95 hours devoted to incidentals related to motions practice (e.g. emails and calls with opposing counsel and between Leading Edge and its counsel; conference calls with the Court; planning meetings; and reviewing materials from opposing counsel), totaling $8,491.70 ("Incidentals"). This does not require any reduction.

Therefore, after my deductions to Leading Edge's request for its Motion to Dismiss and Petition Hours, its Reply Hours, and its Incidentals, the adjusted hours for motions practice is 98.95 hours, which billed at counsel's hourly rate is equivalent to $35,441.70. This is a reasonable lodestar calculation.

*Fee Petition & Reply*

Leading Edge's counsel billed 17.15 hours ($6,002.50) for the fee petition and 16.98 hours ($5,943.00) for the reply brief. As the fee petition and reply briefs required argument on whether Leading Edge was permitted to recover attorneys' fees and calculating the fee it should receive, I do not believe a combined 34.13 hours was unreasonable. Therefore, I will not reduce Leading Edge's lodestar amount for the fee petition and reply brief at this stage. As such, I conclude that a total of $11,945.50 was reasonable for preparing the fee petition and reply brief.

Therefore, Leading Edge's requested hours and the Court's adjusted hours are as follows:

| Category | Hours Billed | Adjusted Hours | Adjusted Amount |
|---|---|---|---|
| Motion to Dismiss & Petition Hours | 60.68 | 45 | $15,750 |
| Reply Hours | 41.25 | 32 | $11,200 |
| Incidentals | 21.95 | 21.95 | $8,491.70 |
| Fee Petition | 17.15 | 17.15 | $6,002.50 |
| Reply Expenses | 16.98 | 16.98 | $5,943.00 |
| Total | 158.01 | 133.08 | $47,387.20 |

When factoring in my reductions, Leading Edge is left with an adjusted lodestar amount of $47,387.20.

*Success based on Claims*

The second step in awarding attorneys' fees is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (internal citations omitted). But here, Leading Edge was successful on both its argument in favor of dismissal and its argument for confirming arbitration. Therefore, no further subtractions are required.

*Overall Success*

The third step in awarding reasonable attorneys' fees is to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the Plaintiff." *Randolph*, 715 F. App'x at 227 (citing *McAfee*, 738 F.34 at 88). In typical attorneys' fee requests, the Fourth

Circuit has stated that "'[w]hen considering the extent of the relief obtained, we must compare the amount of damages sought to the amount awarded.' If a [] plaintiff achieves only part of the success []he sought, the lodestar amount may be excessive." *McAfee*, 738 F.3d at 92–93 (citing *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005); *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

Here, Leading Edge successfully defended against an untimely request to vacate an arbitration award and prevailed on its motion to confirm the award. While I must prevent a windfall for Leading Edge, *see Butler v. DIRECSAT USA, LLC*, No. DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016), I do not believe that awarding Leading Edge the full adjusted lodestar amount of $47,387.20 would be a windfall. In this matter, Leading Edge won an arbitration award of $531,914.89 and RONCO had ample opportunity (three years) to bring its challenge to the arbitration award. It would be inappropriate to penalize Leading Edge for protecting its award by defending the lawsuit before this Court, especially when it was successful on the motion and petition it submitted. Further, Leading Edge was required to oppose RONCO's motion for summary judgment, which I denied as moot given Leading Edge's other success. Mem. Op. & Or. 13. As such, no further reductions are required.

**<u>Conclusion</u>**

For the aforementioned reasons, it is this 27th day of August, 2018, ORDERED that

1. Defendant Leading Edge Venture, LLC's Motion for Attorneys' Fees, ECF No. 37, IS GRANTED AS MODIFIED;

2. Defendant IS AWARDED $47,387.20 in attorneys' fees; and

3. The Clerk of the Court shall CLOSE this case.

                /S/
                Paul W. Grimm
                United States District Judge

jml